UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-56-H

TAMARAH CUNNINGHAM                                          PLAINTIFF

V.

HUMANA INSURANCE COMPANY                                    DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff makes several claims related to the termination of her employment with

Defendant Humana Insurance Company ("HIC"). At this point, the remaining claims are for

disability discrimination, failure to accommodate and retaliation under the Kentucky Civil Rights

Act ("KCRA"), and interference and retaliation under the Family and Medical Leave Act

("FMLA"). Defendant has moved for summary judgement on all claims.

This opinion will not address Plaintiff's failure to accommodate claim because the factual

and legal basis of this claim is significantly different from that of the claims discussed here. The

Court will consider that claim in a subsequent memorandum. For the reasons that follow, the

Court will grant summary judgment on the disability discrimination and retaliation KCRA

claims,[1] and interference and retaliation FMLA claims.

I.

Plaintiff has worked for Humana since 2004, but began employment with Defendant HIC

in December of 2006. For HIC, Plaintiff performed data entry, which required both speed and

---

[1]Plaintiff only points to her termination as evidence of retaliation under the KCRA; therefore, the Court will only consider this claim with regards to termination, rather than any other alleged adverse employment action.

accuracy.  HIC measures speed of employees with a production score and accuracy with a quality score, requiring employees to maintain a score of 100% and 94.84% or higher respectively.  Plaintiff had problems meeting these performance goals as early as her 2007 evaluation.  Plaintiff was counseled about her low quality score in September 2008.  At one point, Plaintiff was put in a different position, working with change of address and ID cards. Plaintiff could not meet the performance goals for this position either.  During the period of time when her performance was below standards, Plaintiff did apply for other positions within Humana.  She  was interviewed for one but did not receive a job offer.

In August 2009, due to repeated low performance scores, Plaintiff was required to complete a Competency & Contribution Improvement Plan ("CCIP").  At the time of the CCIP, Plaintiff knew that her monthly performance scores had been repeatedly below standard.  As part of the CCIP, Plaintiff met almost weekly with her supervisors to improve her speed and accuracy.  Plaintiff claims she did not receive coaching or training during these meetings, but she acknowledges that most of these meetings did occur.  Despite these meetings, Plaintiff's performance did not improve, and, on December 17, 2009, after eleven consecutive months of failing to meet performance standards, she was terminated.

In the midst of her employment at HIC, Plaintiff encountered significant medical problems.  In 2005, shortly before beginning work with HIC, Plaintiff was diagnosed with multiple sclerosis ("MS").  At the end of 2006 and beginning of 2007, Plaintiff took leave for two months due to a MS flare.  Upon returning in February 2007, she worked four hours a day, then slowly progressed to full time work.  Humana provided her a parking space close to the building for six weeks due to her inability to walk long distances.  In June 2007, Plaintiff was

certified for FMLA leave for intermittent MS treatment. In December 2007, she again experienced an MS exacerbation and received short term disability and FMLA leave. When she returned to work at the end of February 2008, she was accommodated by HIC in the same fashion, progressively longer work days and a nearby parking space.

In June 2008, Plaintiff was again approved for short term disability and FMLA leave. Another MS exacerbation occurred in August of 2008, resulting in half days of work for four days and several days of short term disability and FMLA. In June 2009, she was again approved for intermittent leave under FMLA, though she was not incapacitated at the time. Either in June or September of 2009, Plaintiff took some additional FMLA leave.

At some point in time, Plaintiff says that her supervisor called her while she was on medical leave and pressured her to come back to work before she was ready.[2] Plaintiff claims to have repeatedly asked for a parking spot closer to work for longer than six weeks, complained her supervisor harassed her on return from FMLA leave about the quality of her work, and discussed concerns about her supervisor's failure to promptly complete FMLA paperwork. During her employment, Plaintiff claims to have repeatedly requested training and help meeting speed and accuracy standards, but with no training provided until the CCIP was implemented. Plaintiff provides no specifics with regards to any of these complaints.

---

[2]Plaintiff discussed such a telephone call twice in her deposition. One time, the telephone call appeared to have occurred when Plaintiff was on leave in 2007; the second time Plaintiff mentioned such a phone call, the Court cannot deduce if it was a reference to the phone call that likely occurred in 2007 or was another similar phone call. In her affidavit, Plaintiff claims that the phone call occurred during a leave in 2009. Defendant objects to the use of Plaintiff's affidavit, claiming it contradicts Plaintiff's deposition testimony. *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453, 460 (6th Cir. 1986). Because the deposition testimony on this point is unclear to the Court, the Court will merely rely on the fact that Plaintiff claims to have been pressured to return to work by her supervisor at some point during her employment. The Court did not have access to Plaintiff's full deposition, but will assume all relevant questions and answers were included within documents submitted to the Court.

## II.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). While the moving party must demonstrate that no genuine issue of material fact exists, in response, the non-moving party must move beyond the pleadings and present evidence in support of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment." *Arendale v. City of Memphis,* 519 F.3d 587, 605 (6th Cir. 2008).

## III.

The Court now considers Plaintiff's claims for disability discrimination and retaliation under the KCRA. Claims under the Act are analyzed similarly to those under the Americans with Disabilities Act ("ADA"). *Howard Baer, Inc. v. Schave,* 127 S.W.3d 589, 592 (Ky. 2003). Because the KCRA has not been amended as was the ADA, cases involving the KCRA apply the pre-amendment ADA law. *Breen v. Infiltrator Systems,* 417 F. App'x 483, 486 (6th Cir. 2011). Plaintiff also has claims for interference and retaliation under the FMLA.

All of Plaintiff's claims follow the general *McDonnell Douglas* burden shifting framework where the plaintiff must establish a prima facie case of a particular claim, shifting the burden to the defendant to present a legitimate business reason for its decision or action; the

plaintiff then has the opportunity to demonstrate that the proffered reason was pretext for the illegal but actual reason for the adverse employment action. *Whitfield v. Tenn.,* 639 F.3d 253, 259-60 (6th Cir. 2011) (discussing application of the burden shifting framework in the context of disability discrimination claims); *Walsh v. United Parcel Serv.,* 201 F.3d 718, 724-25 (6th Cir. 2000) (using the McDonnell Douglas framework for a failure to accommodate claim); *Clay v. United Parcel Serv., Inc.,* 501 F.3d 695, 713 (6th Cir. 2007) (stating that "[t]he *McDonnell Douglas* burden shifting approach also applies to retaliation claims); *Daugherty v. Sajar Plastics, Inc.,* 544 F.3d 696, 707(6th Cir. 2008) (applying the *McDonnell Douglas* burden-shifting framework to a FMLA retaliation claim); *Edjar v. JAC Products, Inc.,* 443 F.3d 501 (6th Cir. 2006) (discussing prima facie case of FMLA interference and legitimate reason for alleged interference).

For purposes of the current claims, the Court will assume Plaintiff can establish a prima facie case. Defendant says that it terminated Plaintiff because she failed to meet the established performance standards for her job. However, an employee's failure to meet established performance standards in these circumstances is certainly a legitimate business reason for termination. *See Whitfield,* 639 F.3d 253. Therefore, the only remaining question is whether Defendant's proffered reason is pretext for disability discrimination or retaliation under the KCRA or the FMLA. The Court will consider each.

A.

A plaintiff can show pretext by demonstrating that (1) the proffered reasons had no basis in fact, (2) the proffered reasons "did not actually motivate the company's decision" or (3) the proffered reasons were insufficient to support Defendant's actions. *Cline v. BWXT Y-12, LLC,*

521 F.3d 507, 509 (6th Cir. 2008).  Plaintiff is unclear how she might show pretext.  Plaintiff acknowledges, however, that she did not meet HIC's performance standards.  Nor does she seem to suggest that her poor performance was insufficient reason for termination.  In fact, she understood that the CCIP would result in termination if her performance was unimproved.  Therefore, the Court will discuss whether Plaintiff's performance was the actual reason for her termination.

"[P]laintiff must prove only enough to create a *genuine issue* as to whether the rationale is pretextual."  *Whitfield,* 639 F.3d at 260(emphasis in original).  Plaintiff has "the burden of persuasion on this point.  This burden is not satisfied by introducing 'metaphysical doubt' as to the intent of the decision-maker or the adequacy of the process. [Plaintiff] was required to bring forward evidence tending to show that retaliatory animus [or disability discrimination] was the but-for cause of h[er] termination.  [Her] subjective belief that [Defendant's] proffered reason is false, and that retaliation [or discrimination] was the actual motive, is not sufficient to withstand summary judgment."  *Carson v. Ford Motor Co.,* 413 F. App'x 820, 824 (6th Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).

In her deposition, Plaintiff says that Defendant was trying to find a reason to terminate her, likely because MS made her a costly employee.  However, Plaintiff produced no actual evidence supporting such an assertion.[3]  In fact, Plaintiff mainly argues that her supervisor called

---

[3]For instance, Plaintiff provides the monthly cost of her MS medications in her deposition to demonstrate she was such a costly employee that Defendant would be motivated to terminate her.  However, Plaintiff points to no action of Defendant from which a jury could infer that it contemplated the costs of an employee with MS.  In fact, Plaintiff offers no evidence besides her conclusion that cost must have been the real reason for termination.  In addition, Plaintiff claims that Defendant changed the guidelines for performing her position one to two months before she was terminated. Dep. 107-108.  She claims that she was not provided with those new guidelines.  However, Plaintiff did not argue either of these assertions in response to the summary judgment motion nor provide the Court with any evidence demonstrating it.  In her deposition, Plaintiff seems to suggest that her supervisor did

her while she was on leave and told her to come back to work or loose her job.  Plaintiff alleges the same supervisor then "harrass[ed] [her] about the quality of [her] work . . . knowing that he had forced [her] to return to work while [she] was still ill and under medical care."  Cunningham Aff. ¶5.  In addition, Plaintiff claims that she repeatedly asked for training to assist her in better performing her job while dealing with the effects of MS; she complained about HIC's failure to train, promptly complete her FMLA paperwork, and provide parking close to work for longer than six weeks.

Here, Cunningham asks the Court to infer from a phone call received sometime towards the end of a medical leave, poor evaluations of her work, and training that did not meet Plaintiff's expectations, that HIC terminated her due to her MS.  At best, Plaintiff has created the sort of "metaphysical doubt" that is insufficient to prove pretext.  *Carson,* 413 F. App'x at 824. As to her claims that she was terminated in retaliation under FMLA or KCRA, Plaintiff provides no evidence besides the phone call from her supervisor and vague allegations of temporal proximity between complaints and termination.  These facts support a prima facie case, but "the plaintiff may not rely simply upon h[er] prima facie evidence but must, instead, introduce additional evidence" of retaliation to show pretext.  *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994) (overruled on other grounds). Because termination was the only basis of her disability discrimination claim and retaliation claims, these claims fail.[4]

B.

---

not consider all of her audits.  Dep 133.  Again, Plaintiff did not argue this fact in response to summary judgment.
  [4]Plaintiff does claim that she was harassed by her supervisor about the quality of her work.  She provides no details about this alleged "harassment" and does not make a hostile work environment claim.  Generally, for harassment to be retaliation it must be severe or pervasive. *Morris v. Oldham Cnty. Fiscal Court,* 201 F.3d 784, 792 (6th Cir. 2000).  Therefore, the Court considered only Plaintiff's termination in these claims and will consider any failures to accommodate under the KCRA in another opinion.

Next, the Court considers Plaintiff's claim for interference under the FMLA. "To prevail on the entitlement theory claim . . ., an employee must prove that: (1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled." *Grace v. USCAR and Bartech Tech. Servs.,* 521 F.3d 655, 669 (6th Cir. 2008) (citing *Edgar,* 443 F.3d at 507). Plaintiff seems to allege that the phone call from her supervisor while she was on leave along with the supervisor's alleged harassment after she returned to work, constituted interference with FMLA benefits. Plaintiff acknowledged in her deposition that she received the call from her supervisor as her FMLA leave was expiring. Cunningham Dep 215: 22-23. Nowhere does she allege that she came back from FMLA leave early, was denied any leave, or was placed in a different position or a position with less pay on return from leave. *See Harris v. Metro. Gov't of Nashville and Davidson Cnty., TN,* 594 F.3d 476, 482 (6th Cir. 2010) (discussing FMLA benefits).

Plaintiff does state that her supervisor "harassed" her about the quality of her work. The statutory language and some non-binding case law suggests that harassment could be "interfere[nce] with . . . any right provided under this subchapter." 29 U.S.C. §2615 (a)(1); *Johnston v. Pet's Rx, Inc.,* No. 06-1566-KI, 2007 WL 2746918, at *12 (D. Or. Sept. 19, 2007); and *Mueller v. J.P. Morgan Chase & Co.,* No. 1:05 CV 560, 2007 WL 915160 at * 11 (N.D. Ohio March 23, 2007). Other non-binding case law suggests just the opposite. *Emmons v. City University of New York,* 715 F.Supp.2d 394, 418 (E.D.N.Y. 2010) (stating that "[t]he mere fact that plaintiff has alleged that she was 'harassed' by Smith during her leave does not establish that

any of her actual benefits were denied or subject to interference") and *Simpson v. Office of Chief Judge of Circuit Court of Will Cnty.,* 520 F.Supp.2d 998, 1009 n. 10 (N.D. Ill. 2007). Regardless, even if freedom from harassment is a benefit protected by the FMLA, Plaintiff has provided no evidence as to the content or frequency of such harassment that suggests severity or pervasiveness sufficient to alter any terms or conditions of Plaintiff's employment protected by the FMLA.

The evidence in this case simply establishes an interference with her FMLA rights. To the contrary, over many years, Defendant accommodated Plaintiff's every request for such leave. Though Plaintiff may have felt harassed, Plaintiff does not allege any actual acts that constitute interference with or denial of FMLA rights.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's claims for disability discrimination and retaliation under the KCRA and interference and retaliation under the FMLA are DISMISSED WITH PREJUDICE.

Plaintiff's failure to accommodate claim remains under submission.

cc:     Counsel of Record