UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-56-H

TAMARAH CUNNINGHAM                                                              PLAINTIFF

V.

HUMANA INSURANCE COMPANY                                                    DEFENDANT

**MEMORANDUM OPINION AND ORDER**

In a previous opinion, the Court dismissed Plaintiff's disability discrimination and retaliation Kentucky Civil Rights Act ("KCRA") claims and interference and retaliation Family and Medical Leave Act ("FMLA") claims. Defendant also moved for summary judgment on Plaintiff's claim that Humana Insurance Company ("HIC") failed to accommodate her disability in violation of the KCRA. The Court will now consider that motion.

I.

In its previous opinion, the Court provided detailed facts of the employment relationship between Cunningham and HIC. Plaintiff began employment with Defendant HIC in December of 2006 in a data entry position. Plaintiff had problems meeting the performance standards for her data entry position as measured in terms of speed and accuracy. Defendant documented her performance issues in performance evaluations in 2007 and 2008. Ultimately, in August 2009, due to repeated low performance scores, Defendant required Plaintiff to complete a Competency & Contribution Improvement Plan ("CCIP"). As part of the CCIP, Plaintiff met weekly with supervisors at HIC to improve her speed and accuracy. Plaintiff agrees that most of these meetings occurred, but feels she did not receive any training or coaching during the meetings.

Shortly before beginning work for HIC, Plaintiff had been diagnosed with Multiple Sclerosis ("MS"). During the course of her employment, she took multiple leaves in order to recuperate from MS flares. Several times Defendant allowed Plaintiff to return to work on a part-time schedule, slowly progressing to full-time work. She was given a parking spot close to the building in which she worked. The close parking space was allowed for six weeks. After that, Plaintiff had to park in a garage one block away and walk to work or take a city bus at Defendant's expense that dropped off at the door of her building. Plaintiff asked to be allowed to park closer to her building for longer then six weeks, but HIC denied this request.

Plaintiff claims to have repeatedly asked for training to improve her performance while coping with the effects of MS. Plaintiff also asked, at some point during her employment, to be given a different job with lower or no performance standards or to be held to a lower performance standard in her current position. Plaintiff interviewed for another position at HIC but did not receive the job because she lacked qualifications. HIC temporarily reassigned Plaintiff to entering identification card and change-of-address data, but Plaintiff was unable to meet the performance standards of this job.

## II.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654,

655 (1962). While the moving party must demonstrate that no genuine issue of material fact exists, in response, the non-moving party must move beyond the pleadings and present evidence in support of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment." *Arendale v. City of Memphis,* 519 F.3d 587, 605 (6th Cir. 2008). As with a plaintiff under the Americans with Disabilities Act (ADA),[1] a KCRA plaintiff's response to a summary judgment motion must show there is a genuine issue of material fact as to each element of her *prima facie* case and that the defendant's nondiscriminatory explanation for the employment action, if any, is pretextual. *Whitfield v. Tennessee*, 639 F.3d 253, 259-60 (6th Cir. 2011) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

III.

The elements of a *prima facie* failure-to-accommodate claim are: (1) Plaintiff is disabled, (2) Plaintiff is otherwise qualified for the position, with or without reasonable accommodation; (3) Defendant knew or had reason to know about Plaintiff's disability; (4) Plaintiff requested an accommodation; and (5) Defendant failed to provide the accommodation. *Myers v. Cuyahoga Cnty.*, *Ohio*, 182 Fed. App'x 510, 515 (6th Cir. 2006) (citing *DiCarlo v. Potter,* 358 F.3d 408, 419 (6th Cir. 2004)).[2] The parties dispute whether Plaintiff is disabled. The Court is cognizant

---

[1] Claims under the KCRA are analyzed similarly to claims under the ADA. *See Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003).

[2] While the elements of a prima facie case of disability discrimination are frequently cited, the elements of a prima facie case of discrimination based on failure to accommodate are less frequently utilized. The Sixth Circuit in *Myers* looked to the elements of a failure to accommodate claim under the Rehabilitation Act as outlined in *DiCarlo.* The main difference between the elements of a prima facie case under the ADA as opposed to the Rehabilitation Act is element four. Regardless, numerous Sixth Circuit cases have stated that the plaintiff must have requested an accommodation. *See, e.g., Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir. 1997) (quoting *Monette*, 90 F.3d at 1183).

that the evidence may not support Plaintiff as disabled under the KCRA.

As with its federal counterpart, the KCRA defines "disability" as "a physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual; a record of such an impairment; or being regarded as having such an impairment." KY. Rev. Stat. Ann. § 344.010(4) (West, Westlaw through 2011 session); *see also* 42 U.S.C. § 12102(1) (2009). This definition requires more than a diagnosis of a potentially debilitating disease; the individual must actually suffer an impairment that substantially limits a major life activity. *See, e.g.*, *Bryson v. Regis Corp.*, 498 F.3d 561, 575-76 (6th Cir. 2007) (finding plaintiff with reflex sympathetic dystrophy condition after corrective knee surgery failed to produce evidence she was substantially limited in a major life activity under KCRA); *see also Turner v. Sullivan Univ. Sys., Inc.*, 420 F.Supp.2d 773, 783-84 (W.D.Ky. 2006) (finding plaintiff who had cancer and restrictions on her ability to lift objects was not disabled under the KCRA); and *McPherson v. Fed. Express Corp.*, 241 F.App'x 277, 282-83 (6th Cir. 2007) (finding plaintiff's insulin-dependent diabetes did not substantially limit a major life activity). Examples of major life activities include walking, breathing, seeing, hearing, speaking, performing manual tasks and caring for oneself. *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003) (listing examples of major life activities that must be impaired); *see also* 29 C.F.R. § 1630.2 (2011). The major life activity must be substantially limited, meaning the individual must be "significantly restricted as to the condition, manner, or duration under which [she] can perform a particular major life activity as compared to...the average person in the general population." *Turner*, 420 F.Supp.2d at 783 (quoting 29 C.F.R. § 1630.2(j)(1)).

Simply asserting a MS diagnosis will not establish a disability. Plaintiff must also show

the disease substantially limited a major life activity. *See, e.g.*, *Croy v. Cobe Labs., Inc.*, 345 F.3d 1199, 1204 (10th Cir. 2003) (finding plaintiff suffering symptoms of MS to the point of having to take unscheduled work absences was not disabled under the ADA); *Nyrop v. Indep. Sch. Dist. No. 11*, 66 F.3d 728, 735 (8th Cir. 2010) (finding plaintiff with "MS-related impairments and physical symptoms" did not have a disability under the ADA); *but cf. Braunling v. Countrywide Home Loans*, 220 F.3d 1154, 1157 (9th Cir. 2000) (finding plaintiff suffering debilitating consequences of MS qualified as disabled).

The Court finds no evidence of a particular major life activity that Plaintiff cannot perform. As to walking, Plaintiff has not asserted the degree to which she has difficulty. If "concentration" were to qualify, Plaintiff has not demonstrated by evidence an inability in that area. All in all, in this fundamental area of the claim, Plaintiff's evidence seems absent.

IV.

Regardless, Plaintiff must request that Defendant make "reasonable accommodations" and show that Plaintiff is "otherwise qualified" for her position at HIC. *See* KY. Rev. Stat. Ann. § 344.030; *see also* 42 U.SC. § 12111(8)-(9). These two elements are interrelated. Determining whether a person is "otherwise qualified for the position with or without reasonable accommodation" will depend on whether the accommodation requested, if any, is reasonable in the first place. *Jakubowski v. Christ Hosp. Inc.*, 627 F.3d 195, 202 (6th Cir. 2010). Plaintiff has the burden of requesting an accommodation that: (1) is reasonable; and (2) will allow her to perform the essential functions of her job. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183-4 (6th Cir. 1996) ("[T]he disabled individual bears the initial burden of proposing an accommodation and showing that *that* accommodation is objectively reasonable...[and] that he or

she is capable of performing the essential functions of the job with the proposed accommodation.").

Plaintiff has relied upon four different accommodation requests: a parking place closer to work for longer than six weeks; a lower speed and accuracy performance standard; moving to a job with less rigorous standards; and training, or at least more or effective training.[3] There are many difficulties with these accommodation requests. Plaintiff provides few details of her actual requests and fails to explain how each accommodation would allow her to perform essential job functions. Furthermore, some of these requests are not reasonable.

A.

The Court will assume that Plaintiff requested she be given a parking spot close to her office building for longer than six weeks, though the record does not specify when or to whom she made such a request. HIC did provide a parking space close to the building for two six-week periods, after which Plaintiff had free bus transportation available to her to take her from the parking garage to the front door of the building in which she worked. Plaintiff did not arrive for work late, and she was not terminated or disciplined for tardiness or any behavior related to her commute into or from work. Plaintiff has not shown that provision of the parking space would render her capable of performing the essential functions of her position. *Monette*, 90 F.3d at 1183. Therefore, a closer parking space was not required as an accommodation to

---

[3] Plaintiff did not argue that she should have been given a different position in her response to the summary judgment motion. However, she did speak about this accommodation in her deposition and Defendant argued why it is not liable for failure to accommodate based on being reassigned to a job without standards. Therefore, the Court will address HIC's responsibilities to reassign a disabled employee. Furthermore, Plaintiff did not specifically respond to summary judgment on the failure-to-accommodate claim at all. However, Plaintiff seemed to incorporate some of this claim into other claims in her response and the Court will therefore not conclude that Plaintiff abandoned this claim.

Cunningham's disability and the failure to provide it was not a failure to accommodate Plaintiff's disability under the KCRA.

B.

Plaintiff also suggests she should have been held to lower performance standards, at least when she was recuperating from an MS flare.[4] Assuming Plaintiff actually requested lower performance standards on account of her disability, lowering performance standards integral to the job position is not a reasonable accommodation under the KCRA. To make out a failure-to-accommodate claim, Plaintiff must show that Defendant denied an accommodation that would have allowed her to adequately perform essential job functions. Ky. Rev. Stat. Ann. § 344.030(6). Instead, what Plaintiff has requested is not an accommodation, but an alteration of the essential job functions. The KCRA does not require an employer to change the essential job functions based on an employee's disability. *See id.* Asking for lower performance standards is not a request for a reasonable accommodation.

C.

In her deposition, Plaintiff states she asked "[t]he supervisor, his boss" to be moved to a job with less rigorous standards.[5] Cunningham Dep. 105, line 8. A reassignment to a vacant position can qualify as a reasonable accommodation under the KCRA. Ky. Rev. Stat. Ann. § 344.030(6). An employer has a duty to consider transferring a disabled employee to a position for which that employee is qualified. *Burns v. Coca-Cola Enters., Inc.,* 222 F.3d 247, 257-58

---

[4]The Court notes that Defendant granted Plaintiff requested leave during her MS flares and that Plaintiff's inability to meet performance standards was not limited to periods in which she suffered MS flares.

[5]It is unclear in this part of the deposition if Plaintiff was asking for a different position or to be held to lower standards. The Court will assume, for the purposes of summary judgment that Plaintiff requested both of these accommodations.

(6th Cir. 2000). However, Plaintiff must show she requested, and Defendant denied, such a transfer to recover on a failure-to-accommodate theory of discrimination. *Id.* The employer is not required to reassign a disabled employee to a position for which she is not otherwise qualified, to waive legitimate employment policies, or to subvert the rights of other employees to accommodate the disabled employee. *Id.* at 257. To be qualified for a reassignment, "the [disabled] employee must 'satisfy the legitimate prerequisites for that alternative position, and...be able to perform the essential functions of that position with or without reasonable accommodation.'" *Id.* at 258 (quoting *Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 678 (7th Cir. 1998)).

Here, Cunningham has not shown that HIC denied her a requested transfer to a vacant position for which she was qualified. HIC temporarily gave her different duties–change of address and ID card duties–but she could not meet the standards of those jobs either. Plaintiff applied for several positions within HIC, was interviewed for one, but admits she was not qualified for that job. Therefore, HIC was not obliged to reassign her to those positions as a reasonable accommodation. Plaintiff has not identified any other vacant positions for which she was qualified and that Defendant denied her. Thus, these facts do not support a failure-to-accommodate claim.

D.

Finally, Plaintiff states that she repeatedly asked for training to help her better perform her job given the physical and mental effects of MS. In her deposition, Plaintiff does not indicate when or to whom these requests were made. Assuming that Plaintiff made such requests, HIC claims to have provided the requested training in the weekly meetings between

Plaintiff and her supervisor.  Though Plaintiff agrees that these meetings occurred, she felt they were mere conversations, including feedback of her performance, but not training.

Again, Plaintiff has failed to show how the service she has requested would accommodate her disability and allow her to perform essential job functions.  The Sixth Circuit has not directly addressed the issue.  However, Judge Richard Posner has commented thoughtfully that the ADA does not require employers to offer special training to disabled employees.  *Williams v. United Ins. Co. of Am.*, 253 F.3d 280 (7th Cir. 2001).  He rejected the plaintiff's contention that the ADA required her employer to provide her with "special training, not offered to nondisabled employees, to enable her to qualify" for the desired job, as the burden placed on employers "would be excessive and is not envisaged or required by the Act."  *Id.* at 282-83.  Judge Posner explains in the opinion that "[t]he duty of reasonable accommodation may require the employer to reconfigure the workplace to enable a disabled worker to cope with her disability, but it does not require the employer to reconfigure the disabled worker."  *Id*. at 283.  This Court agrees with Judge Posner's approach.

Here, Plaintiff wanted training beyond that which HIC provided in the CCIP to help her meet the performance standards of her position.  HIC did not provide additional training beyond that offered in the CCIP to other employees, nor does Plaintiff indicate how her proposed training would address her disability to enable her to meet the essential job functions of her position.  To be sure, more training would likely make her faster and more accurate in entering data.  But such training would improve Cunningham's job skills as it would for any employee–it would not address anything specific to Cunningham's disability.  Like the ADA, the KCRA does not require employers to improve the general job skills of disabled employees to make them

9

qualified for certain jobs. This is the essence of the "otherwise qualified" requirement. Ky. Rev. Stat. Ann. § 344.030(1); *see also Monette*, 90 F.3d at 1186. Thus, the additional training Plaintiff requested was not a reasonable accommodation and Defendant's decision not to provide such training did not violate the KCRA.

V.

Even had Plaintiff made out a *prima facie* claim, Plaintiff would still have the burden at trial of proving that Defendant's non-discriminatory explanation for termination–that Cunningham repeatedly failed to meet the performance standards applied to all employees in her job position–was pretextual. *Whitfield*, 639 F.3d at 259 (6th Cir. 2011) (citing *McDonnell Douglas*, 411 U.S. at 802-04). As an essential element to her case, Plaintiff has the burden at summary judgment to show a genuine issue of material fact as to the issue of pretext. *Id*. at 260 (citing *Celotex*, 477 U.S. at 322); *see also Jones v. Potter*, 488 F.3d 397, 408 (6th Cir. 2007). Plaintiff has presented no evidence whatsoever of a pretext. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that HIC's motion for summary judgment on Plaintiff's failure to accommodate claim is SUSTAINED and that claim is DISMISSED WITH PREJUDICE.

This is a final order.

cc: Counsel of Record